1
2
3
4
5
6          UNITED STATES DISTRICT COURT
7          EASTERN DISTRICT OF WASHINGTON
8
    LINDA McGRAW,                    )
9                                    )   No. 1:12-cv-03093-LRS
                   Plaintiff,        )
10                                   )   **ORDER GRANTING**
         vs.                         )   **PLAINTIFF'S MOTION FOR**
11                                   )   **JUDGMENT, *INTER ALIA***
    CAROLYN W. COLVIN,               )
12  Acting Commissioner of Social    )
    Security,                        )
13                                   )
                   Defendant.        )
14  _____ )

15       **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment

16  (ECF No. 18) and the Defendant's Motion For Summary Judgment (ECF No. 22).

17

18                        **JURISDICTION**

19       Linda McGraw, Plaintiff, applied for Title II Disability Insurance benefits

20  (DIB) and Title XVI Supplemental Security Income benefits (SSI) on June 23,

21  2008.  The applications were denied initially and on reconsideration.  Plaintiff

22  timely requested a hearing and one was held on July 27, 2010, before

23  Administrative Law Judge (ALJ) Cynthia D. Rosa via video.  Plaintiff, represented

24  by counsel, testified at this hearing.  Dr. David Rullman testified as a Medical

25  Expert (ME) and Gail Young testified as a Vocational Expert (VE).  On October

26  15, 2010, the ALJ issued a decision denying benefits.  The Appeals Council

27  denied a request for review and the ALJ's decision became the final decision of the

28  Commissioner.  This decision is appealable to district court pursuant to 42 U.S.C.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

1  §405(g) and §1383(c)(3).

2

3                          **STATEMENT OF FACTS**

4       The facts have been presented in the administrative transcript, the ALJ's

5  decision, the Plaintiff's and Defendant's briefs, and will only be summarized here.

6  At the time of the administrative hearing, Plaintiff was 48 years old.  She has a

7  ninth grade education and past relevant work experience as a waitress and as a

8  caregiver in an adult foster home.  Plaintiff alleges disability since August 15,

9  2005.

10

11                          **STANDARD OF REVIEW**

12      "The [Commissioner's] determination that a claimant is not disabled will be

13  upheld if the findings of fact are supported by substantial evidence...."  *Delgado v.*

14  *Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a

15  mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975),

16  but less than a preponderance.  *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th

17  Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573,

18  576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might

19  accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389,

20  401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the

21  [Commissioner] may reasonably draw from the evidence" will also be upheld.

22  *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348

23  F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a

24  whole, not just the evidence supporting the decision of the Commissioner.

25  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665

26  F.2d 936, 939 (9th Cir. 1982).

27      It is the role of the trier of fact, not this court to resolve conflicts in

28  evidence.  *Richardson*, 402 U.S. at 400.  If evidence supports more than one

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

**ISSUES**

Plaintiff argues the ALJ  erred by: 1) improperly rejecting her migraines, left carpal tunnel syndrome, bilateral cubital tunnel syndrome, and frequent urination at Step Two of the sequential evaluation process; 2) improperly rejecting the opinions of her treating and examining medical providers; 3) improperly discounting her credibility regarding her subjective complaints; and 4) failing to identify specific jobs available in significant numbers which are compatible with her functional limitations.

**DISCUSSION**

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. *Id*.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT- 3**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 4**

claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

The ALJ found the following: 1) Plaintiff has severe impairments which include back and neck pain, and right carpal tunnel syndrome; 2) Plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments listed in  20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work, can occasionally climb ladders, ramps and scaffolds, can occasionally stoop, crouch and crawl, and kneel, and can occasionally use her arms to reach in all directions and perform  gross and fine manipulation; 4) Plaintiff's RFC prevents her from performing her past relevant work; and 5) Plaintiff's RFC allows her to perform jobs that exist in significant numbers in the national economy, including counter clerk, information clerk, and outside delivery.  Accordingly, the ALJ concluded the Plaintiff is not disabled.

## TREATING PHYSICIAN'S OPINION/CREDIBILITY

It is settled law in the Ninth Circuit that in a disability proceeding, the treating physician's opinion is given special weight because of her familiarity with the claimant and her physical condition. *Benecke v. Barnhart,* 379 F.3d 587, 592 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)); *Lester  v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Smolen v. Chater,* 80 F.3d 1273, 1285-88 (9th Cir. 1996); *Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995); and *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  If the treating physician's opinion is not contradicted, it can be rejected only with clear

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

and convincing reasons. *Lester,* 81 F.3d at 830. If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *See Flaten*, 44 F.3d at 1463; *Fair*, 885 F.2d at 605. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept  the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

An examining physician's uncontradicted opinion, like a treating physician's uncontradicted opinion, may be rejected only for clear and convincing reasons, and when the examining physician's opinion is contradicted by another doctor, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31.

The ALJ rejected the opinion of Klickitat Valley Health-Family Practice Clinic physician Natalie A. Luera, M.D., for the following reasons:

> In August 2010, Dr. Natalie Luera agreed with claimant's stated limitation that she can use her hands for a total of 2 hours during a normal eight-hour workday (sic) was reasonable, considering the medical evidence of her impairments. Dr. Luera's opinion is given little weight because it is conclusory and inconsistent with the record as a whole, including other medical opinions and claimant's activities of daily living.  Additionally, there is no record of Dr. Luera ever examining or treating claimant (although claimant's treating PA works in her clinic); and her opinion consists of circling "I agree" with claimant's self-reported limitation on a form provided by claimant's attorney.  Records show claimant had carpal tunnel surgery on the left, with some complications post-surgery, which have resolved.  She has chosen not to have surgery on the right performed, but records show she is able to cook and do some housework, drive, and dress, and perform personal care independently.

(Tr. at p. 28).

Prior to the administrative hearing in July 2010, it appears there was nothing in the record from Dr. Luera.  At the conclusion of the hearing, Plaintiff's counsel was granted 30 days to submit something from Plaintiff's treating physician

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

1   regarding "hand function." (Tr. at p. 71). That "something" turned out to be a

2   signed statement of Dr. Luera, dated August 17, 2010, indicating she "agree[d] . . .

3   that Ms. McGraw's stated limitation that she can use her hands for a total of two

4   hours during a normal eight-hour workday is reasonable, on a more probable than

5   not basis, considering the medical evidence of her impairments." (Tr. at p. 508).

6   The ALJ did not, however, see any of Dr. Luera's records prior to making her

7   decision because those records were not submitted until this matter was pending

8   review by the Appeals Council. Those records (Tr. at pp. 510-533) establish that

9   Dr. Luera began treating the Plaintiff in January 2010. One of those records

10  pertains to Plaintiff's August 17, 2010 visit to Dr. Luera, which was described as

11  follows:

> The patient was encouraged to make an appointment so that
> the patient could have an examination of her hands and elbows.
> The patient has stated that due to severe pain in her elbows and
> wrists, she can only use her hands for a total of two hours out
> of a normal eight hour work day. Her lawyers from the Tree
> Law Offices, request the medical questionnaire to be completed
> to either agree or disagree that the patient's stated limitation is
> reasonable.

(Tr. at p. 526). Dr. Luera specifically noted that Plaintiff had signed a release of

information from Dr. Moser and Dr. Herring, and that her (Dr. Luera's) "decision

will also be based on the information provided by those offices." (*Id.*).

It appears that Dr. Luera's assessment that Plaintiff could use her hands for

a total of only two hours of an eight hour workday was not contradicted by any

other physician who treated or examined Plaintiff. The ALJ did not specifically

cite to any such contradictory opinion in her decision. Neither Dr. Moser or Dr.

Herring said anything contradicting Dr. Luera's assessment. (Tr. at pp. 410-11;

496-99; 441-46). Accordingly, "clear and convincing" reasons needed to be

offered by the ALJ in order to reject Dr. Luera's assessment.

The record shows there is a valid reason Plaintiff did not have carpal tunnel

surgery on her right arm. In his August 21, 2009 note, Dr. Hering wrote:

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

> I frankly advised her that in view of her reflex sympathetic dystrophy after her other surgery, I am certainly hesitant to recommend surgery again. She feels, however, that something must be done on the right side as it really significantly interferes with her sleep and her activities. Because she is adamant about having surgery and she does certainly have neurologic complaints, physical findings, and electrodiagnostic studies consistent with right carpal tunnel syndrome and cubital tunnel syndrome on the right, I have tentatively scheduled her for surgery on October 8.

(Tr. at p. 496). A handwritten note dated October 8, 2009, indicates Plaintiff chose to postpone the surgery and reschedule it for a later date because of other health problems. (*Id*.).

That Plaintiff was "able to cook and do some housework, drive, and dress, and perform personal care independently" does not necessarily cast doubt on Dr. Luera's assessment that Plaintiff could not use her hands for more than two hours in an eight hour work day. Therefore, it is not a "clear and convincing" reason to discount Dr. Luera's assessment.

Notwithstanding her rejection of Dr. Luera's assessment, the ALJ found Plaintiff was limited in her ability to reach and perform gross and fine manipulation in that she "can occasionally use her arms to reach in all directions and perform gross and fine manipulation." This is a limitation which the ALJ included in her hypothetical question to the VE. On questioning by Plaintiff's counsel at the hearing, the VE indicated the "occasional" she was talking about was "intermittent" use of arms and hands throughout the work day, rather than a one to two hour period were there would be no use of the arms or hands at all. The VE conceded that if there needed to be a two hour period with no activity requiring use of the arms or hands, then the jobs identified by her would be eliminated from consideration. (Tr. at pp. 67-68). It is not clear, however, that what Plaintiff testified to at the hearing, and what Dr. Luera reported as a limitation, is that in a work setting, Plaintiff would require a one to two hour block of time when she would not use her arms and hands at all. Instead, it appears that

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 8**

1  intermittent use of arms and hands would be possible so long as such use during

2  an eight hour work day did not exceed a total of two hours.  In a November 2011

3  questionnaire completed by her, Dr. Luera indicated Plaintiff was limited to

4  "occasional" use of her right and left upper extremities in terms of handling and

5  reaching, defined as 1-2 hours of the work day.  (Tr. at p. 561).

6        Dr. Luera also saw the Plaintiff for neck and back pain.  In the November

7  2011 questionnaire which was considered by the Appeals Council, Dr. Luera

8  opined that as a result of neck and back pain, Plaintiff would be limited to

9  sedentary work, defined as being capable of lifting 10 pounds maximum and

10 frequently lifting and/or carrying articles such as dockets, ledgers, and small tools.

11 (Tr. at p. 561; see also 20 C.F.R. §404.1567(a) and §416.967(a)).  Here again, the

12 record does not reveal that any other treating or examining physician specifically

13 took issue with this opinion, even if some of them may have suggested the

14 objective findings were not entirely consistent with the degree of pain reported by

15 Plaintiff.[1]  No treating or examining physician suggested the Plaintiff was

16 malingering.

17       As early as April 2007, Gregory D. Zuck, M.D., opined that Plaintiff was

18 limited to sedentary exertion:  "weight restrictions should be set at 5 pounds for

19 lifting, carrying, pushing and pulling."  (Tr. at p. 312).  In August 2007, Dr. Zuck

20 indicated he intended to challenge the closure of Plaintiff's Labor and Industries

21 claim and the finding that there was no disability from Plaintiff's work-related

22

23       [1] For example, on September 15, 2008, Jerod A. Cottrill, D.O., reported: "I

24 reviewed with Linda that structurally and neurologically I cannot explain the pain

25 that she has been experiencing."  (Tr. at p. 432).  Dr. Cottrill, however, did not

26 suggest Plaintiff was malingering or exaggerating her pain and recommended that

27 certain laboratory work be done to ascertain the reason for the level of pain

28 alleged by Plaintiff.  (*Id*.).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 9**

1  injury.  (Tr. at pp. 313-314).  Jennifer L. Olson, a physician assistant in the same
2  office with Dr. Zuck, also did not question the severity of the neck and back pain
3  alleged by Plaintiff and she too agreed that Plaintiff was limited to sedentary work.
4  (Tr. at p. 476).  In fact, in her February 2009 chart note, Ms. Olson accurately
5  summed up the Plaintiff's situation as follows: "She has now seen neurosurgery
6  and physiatry and her case is clearly not surgical, in fact her pain doesn't really fit
7  with any etiology **but it is evident to all** that she is in pain and she does really
8  well with keeping [physical therapy] appts. and follow through."  (Tr. at p.
9  458)(emphasis added).[2]

10      Physicians at the Water's Edge Pain Relief Institute in Yakima also did not
11  question the severity of the pain alleged by Plaintiff when she started going there
12  in the latter part of 2011 to receive epidural steroid injections for pain.  (Tr. at pp.
13  545-558).  For example, Henry Y. Kim, M.D., noted: "The patient reports
14  persistent posterior neck pain with pain down the right scapular area.  MRI of
15  cervical pain has demonstrated disk herniation at C6 and C6-7 on the symptomatic
16  right side **correlating** with the scapular pain."  (Tr. at p. 552)(emphasis added).

17      As noted, the ALJ found that Plaintiff's neck and back pain constituted a
18  "severe" impairment, one which significantly limits physical or mental ability to
19  do basic work-related activities, 20 C.F.R. §§ 404.1520(c) and 416.920(c), and
20  _____

21      [2] It is recognized that as a physician assistant, Ms. Olson is not an
22  acceptable sources within the meaning of the regulations. 20 C.F.R. §404.1513(a)
23  and 20 C.F.R. §416.913(a).  Although her opinion cannot be considered a medical
24  opinion, it can still be considered to show the severity of the Plaintiff's
25  impairments and how they affected her ability to work.  20 C.F.R. §404.1513(d)
26  and 20 C.F.R. §416.913(d).  And, as noted, her opinion is consistent with the
27  opinion of the treating and examining physicians who offered an opinion
28  regarding Plaintiff's functional limitations.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

which results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  The ALJ found, however, there were reasons to discount Plaintiff's credibility regarding the severity of the pain alleged by her.

An ALJ can only reject a plaintiff's statement about limitations based upon a finding of "affirmative evidence" of malingering or "expressing clear and convincing reasons" for doing so.  *Smolen v. Chater,* 80 F.3d 1273, 1283-84 (9th Cir. 1996).  "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony."  *Tonapeytan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001)*.  See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.2002)(following factors may be considered:  1) claimant's reputation for truthfulness;  2) inconsistencies in the claimant's testimony or between her testimony and her conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

The ALJ cited Plaintiff's activities of daily living as indicating that her functional limitations are not as significant as she alleges.  (Tr. at p. 25).  The daily living activities testified to by Plaintiff at the July 2010 hearing do not constitute "clear and convincing reasons" for discounting Plaintiff's credibility as to her expressed functional limitations.  Plaintiff testified that her husband and her children help with the housework.  While she puts the laundry in the washing machine, her husband usually takes it out and the children do the folding.  The children also do the vacuuming and the dusting.  Plaintiff testified she does some dishes, but the most she can tolerate is about 10 minutes before her hands start to tire.  (Tr. at pp. 46-47).  The ALJ noted there are reports in the record from 2005, 2006 and 2008 indicating that Plaintiff's daily living activities **at that time** may have been greater than testified to by her in July 2010 (Tr. at p. 25).  This,

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 11**

however, can be explained by a worsening of Plaintiff's condition over time.  For example, the "Function Report" completed by Plaintiff in early July 2008 was several months before her left hand carpal tunnel surgery in November 2008 which subsequently resulted in her suffering from reflex sympathetic dystrophy. As such, her testimony at the July 2010 hearing that she was now writing like a kindergartner (Tr. at p. 50) is not suspect when compared to what her writing ability may have been two years earlier when she completed the "Function Report."

The ALJ also discounted Plaintiff's credibility because of her alleged failure to "follow[] through with recommendations and referrals." (Tr. at p. 26).  The evidence cited by the ALJ, however, does not establish that Plaintiff actually failed to so follow through.  There is nothing in the record indicating that any treating or examining physician found Plaintiff failed to comply with recommended treatment.  Indeed, in July 2008, John L. Hart, D.O., indicated  Plaintiff had been doing some home exercises, but he did not think it was "going to make any significant difference." (Tr. at p. 434).

The ALJ noted the record shows Plaintiff has some history of alcohol abuse and cocaine and methamphetamine use. (Tr. at pp. 26-27).  There is, however, nothing in the record indicating that Plaintiff has attempted to conceal this.  To the contrary, the record indicates she has been candid about her use and her periodic relapses over the years.  The fact Plaintiff denied alcohol and drug addiction in a September 2006 pain clinic consultation (Tr. at p. 233) is not manifestly inconsistent with her admission in May 2005 that she "has been using some cocaine and meth up until recently." (Tr. at p. 252).  The ALJ essentially acknowledged as much by noting that Plaintiff's alcohol and drug use was "not determinative" of her credibility. (Tr. at p. 27).

The record contains no affirmative evidence of malingering and the ALJ did not offer "clear and convincing" reasons for rejecting Plaintiff's subjective pain

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 12**

complaints which are consistent with the opinions of Dr. Luera regarding
Plaintiff's functional limitations in November 2011. If the limitations opined by
Dr. Luera in her November 2011 report result in a finding of disability on remand,
it will be necessary for the ALJ to determine the onset date of disability and, with
regard to Title II, whether that onset date is prior to the date the Plaintiff was last
insured for such benefits (December 31, 2009).

**SEVERE IMPAIRMENTS**

A "severe" impairment is one which significantly limits physical or mental
ability to do basic work-related activities. 20 C.F.R. §§ 404.1520(c) and
416.920(c). It must result from anatomical, physiological, or psychological
abnormalities which can be shown by medically acceptable clinical and laboratory
diagnostic techniques. It must be established by medical evidence consisting of
signs, symptoms, and laboratory findings, not just the claimant's statement of
symptoms. 20 C.F.R. §§ 404.1508 and 416.908.

Step two is a *de minimis* inquiry designed to weed out nonmeritorious
claims at an early stage in the sequential evaluation process. *Smolen*, 80 F.3d at
1290, citing *Bowen*, 482 U.S. at 153-54 ("[S]tep two inquiry is a *de minimis*
screening device to dispose of groundless claims"). "[O]nly those claimants with
slight abnormalities that do not significantly limit any basic work activity can be
denied benefits" at step two. *Bowen*, 482 U.S. at 158 (concurring opinion).
"Basic work activities" are the abilities and aptitudes to do most jobs, including:
1) physical functions such as walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying, or handling; 2) capacities for seeing, hearing, and speaking; 3)
understanding, carrying out, and remembering simple instructions; 4) use of
judgment; 5) responding appropriately to supervision, co-workers and usual work
situations; and 6) dealing with changes in a routine work setting. 20 C.F.R. §§
404.1521(b); 416.921(b).

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 13**

Based on the foregoing discussion with regard to the opinion of Dr. Luera concerning Plaintiff's physical impairments and resulting functional limitations, and Plaintiff's subjective complaints of pain, it is unnecessary to determine whether the ALJ erred in deeming Plaintiff's left carpal tunnel syndrome and cubital tunnel syndrome to be non-severe impairments.

The record establishes that Plaintiff's migraines are triggered by her neck pain which is a "severe" impairment in its own right. (Tr. at pp. 51, 232, 260, 276, 366, 372 and 529). As discussed above, the ALJ improperly discounted Plaintiff's complaints regarding the severity of her neck pain. No treating or examining physician disputed Plaintiff's complaints about migraines and other headaches being triggered by her neck pain. Accordingly, while the migraines and headaches may not constitute a separate "severe" impairment, they should be accounted for as a non-exertional limitation in determining Plaintiff's residual functional capacity.

Plaintiff's alleged difficulties with frequent urination are not established by medical evidence, but solely by claimant's statement of symptoms. (Tr. at pp. 315-318). After complaining about frequent urination on January 23 and February 1, 2008, Plaintiff denied any urinary problems during a March 11, 2008 examination by John J. Crocker, M.D. (Tr. at p. 336), during an August 25, 2008 examination by Emily A. Moser, M.D. (Tr. at p. 410), and during a September 15, 2008 examination by Jerod A. Cottrill, D.O. (Tr. at p. 430). Accordingly, the ALJ did not err in concluding frequent urination is not a "severe" impairment for the Plaintiff.

**REMAND**

This matter will be remanded for further proceedings. Because the ALJ improperly rejected the opinions of Plaintiff's treating and examining physicians, and improperly discounted Plaintiff's pain complaints, the ALJ's residual

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 14**

1  functional capacity determination is not supported by substantial evidence in the
2  record.  On remand, the Commissioner will redo the Step Five analysis based on
3  the exertional and non-exertional limitations set forth in Dr. Luera's report dated
4  November 30, 2011 (Tr. at pp. 560-62), considering also the impact of migraines
5  and headaches suffered by Plaintiff.  If the Commissioner determines that Plaintiff
6  is disabled based on these limitations, it will of course be necessary for the
7  Commissioner to also determine an appropriate disability onset date.  It is noted
8  that Plaintiff alleges disability since August 15, 2005, and that December 31, 2009
9  is the date on which she was last insured for Title II benefits.
10  /

**CONCLUSION**

12       Plaintiff's Motion For Summary Judgment (ECF No. 18) is **GRANTED** and
13  Defendant's Motion For Summary Judgment (ECF No. 22) is **DENIED**.  Pursuant
14  to sentence four of 42 U.S.C. §405(g), the Commissioner's decision denying
15  benefits is **REVERSED** and this matter is **REMANDED** to the Commissioner for
16  further proceedings as set forth above.

17       **IT IS SO ORDERED.**  The District Executive shall enter judgment
18  accordingly and forward copies of the judgment and this order to counsel of
19  record.

20       **DATED** this ___13th___ of January, 2014.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT- 15**